Leo Fox, Esq.
Attorney for Debtor
630 Third Avenue-18th Floor
New York, New York 10017
(212) 867-9595

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
IN RE:  Case No.: 15-12869 (SCC)
Chapter 11 Reorganization

961-969 WESTCHESTER AVENUE CORP.,

Debtor.
-------------------------------------------------------------X

# FIFTH AMENDED PLAN OF REORGANIZATION
# DATED JANUARY12, 2017

The above captioned Debtor and Debtor-in-Possession proposes this Plan of Reorganization pursuant to Section 1121 of the Bankruptcy Code.

## ARTICLE I

## DEFINITIONS

1.1 All terms used in this Plan, unless the context otherwise requires, are as defined in Title 11 of the United States Code. The following terms have the meaning set forth in this Article I.

| | |
|---|---|
| "Administrative Claim" | An Allowed Claim or requests for payment under Section 503(b) entitled to priority under Section 507(a)(2) of the Bankruptcy Code, administrative expenses approved by the Court pursuant to Bankruptcy Code Section 503(b), and United States Trustee fees under 28 U.S.C. § 1930 (United States Trustee fees are not required to have been filed as a request for payment). |
| "Allowed" | Means: (a) with respect to an Administrative Claim of the kind described in Section 503(b), (2), (3), (4) or (5) of the Bankruptcy Code, an Administrative Claim that has been |

| | |
|---|---|
| | Allowed, in whole or in part, by a Final Order; (b) with respect to any other Administrative Claim, including an Administrative Claim of the kind described in Section 503(b), an Administrative Claim as to which no objection has been filed; (c) with respect to any Claim that is not an Administrative Claim, a Claim that is either (i) listed on the Schedules or (ii) is not a Disputed Claim or (iii) has been allowed by a Final Order; or (d) with respect to any Equity Security Interest, an Equity Security Interest that is not Disputed, |
| "Bankruptcy Code" | Title 11 of the United States Code, Sections 101, et seq. or as amended thereafter in effect as of the Filing Date. |
| "Bid Procedures" | Means those procedures approved by the Court which will govern the conduct of the Auction for Property, the qualification of bidders to bid at the Auction and other matters related thereto, as more specifically set forth in the Bid Procedures Order. |
| "Chapter 11 Case" | The Chapter 11 case no. 15-12869 (SCC) commenced by the Debtor on the Filing Date. |
| "Claim" | A Claim, as defined in Section 101(5) of the Bankruptcy Code, against the Debtor including, without limitation, claims allowable under Section 502 of the Bankruptcy Code or requests for payment of administrative expenses allowed under Section 503 of the Bankruptcy Code. |
| "Claimant" or "Creditor" | The holder of a Claim, including the holder of a claim for damages resulting from the rejection of an unexpired executory contract or lease. |
| "Closing" | The date on which an Order confirming this Plan is entered by the Court, provided that such Order has not been stayed. |

| | |
|---|---|
| "Confirmation Date" | The date on which an Order confirming this Plan is entered by the Court, provided that such Order has not been stayed. |
| "Confirmation Order" | An Order of the Bankruptcy Court confirming the Plan in accordance with the Bankruptcy Code. |
| "Court" | The United States Bankruptcy Court for the Southern District of New York, or such other court as may from time to time have original jurisdiction over this Chapter 11 proceeding. |
| "Credit Bid" | A bid made by a Secured Creditor for the Property of its debt secured by the Property rather than cash. |
| "Credit Bidder" | A creditor making a Credit Bid in an amount equal to Classes 1, 2 and 3, the balances calculated as of the Maltz Auction. |
| "Debtor" | 961-969 Westchester Avenue Corp. |
| "Disallowed Claim" | Any Claim or portion thereof that is determined in a Final Order of the Court not to be allowed pursuant to Section 502 and 503 of the Bankruptcy Code. |
| "Disclosure Statement" | Any disclosure statement required by Section 1125 of the Bankruptcy Code, and approved by the Court. |
| "Disputed" | Means, (1) with respect to any Claim other than an Administrative Claim, a Claim (i) that would be deemed filed pursuant to Section 1111(a) of the Bankruptcy Code but as to which (A) a proof of claim has been timely filed that is inconsistent in any way with the description or treatment of such |

3

| | |
|---|---|
| | Claim in the Schedules, or (B) as to which an objection has been filed, or (ii) that would not be deemed filed pursuant to Section 111(a) of the Bankruptcy Code, whether by reason of its exclusion from the Schedules or its description therein as disputed, contingent or unliquidated, but as to which a proof of claim has been filed; or (2) with respect to an Administrative Claim, an Administrative Claim as to which an objection has been filed. |
| "Distribution" | A distribution of cash or cash equivalents to the holders of Allowed Claims under the Plan. |
| "Effective Date" | Shall be the later of the date of the Closing or the date that the Closing of the Sale of the Property is finally concluded. |
| "Estate" | The estate created in this case pursuant to Section 541 of the Bankruptcy Code. |
| "Filing Date" | October 26, 2015. |
| "Final Distribution" | The date on which all Distributions provided for under this Plan have been made. |
| "Final Order" | An Order of a court as to which (a) any appeal that has been taken has been determined finally or dismissed, (b) the time for appeal has expired and (i) no timely Notice of Appeal has been filed and (ii) no Order of any Court having the affect of tolling or otherwise extending the effect of the Order or the appeal period of such Order. |
| "Lien" | Any valid and enforceable lien, mortgage, security interest, pledge, charge, encumbrance or other legally cognizable security device of any kind. |
| "Plan" | Debtor's Plan of Reorganization or as modified in accordance with the Bankruptcy Code. |

| | |
|---|---|
| "Property" | The Debtor's real estate and associated rights located at 961-969 Westchester Avenue, Bronx, New York. |
| "Sale Approval Order" | The Order approving the sale of the Property to the Successful Bidder. The Confirmation Order may contain the Sale Approval Order. |
| "Sale Proceeds" | The gross proceeds from the sale of the Property. |
| "Secured Claim" | Any Claim that is secured by a Lien against any property of the Estate under applicable non-bankruptcy law that was perfected as of the Petition Date and is not otherwise avoidable, but only to the extent that such Claim is not greater than the value of the assets of the Debtor securing such debt. |
| "Secured Creditor" | A Creditor holding a Secured Claim. |
| "Successful Bidder" | The bidder who the Court determined made the highest and/or best bid for the Property and whose bid is approved by the Court. The Successful Bidder may be a Credit Bidder. |

## ARTICLE II

## DESIGNATION OF CLAIMS AND INTEREST

2.1 **Class 1**: Representing the Allowed secured claims of the NYCTL 1998-2 Trust, NYCTL 2014-A and NYCTL 2015-A ("NYCTL") secured by tax liens on the Property. Such creditor filed claims numbered 1, 2, 3 and 4 totaling $376,294.11 owed by the Debtor as of the Filing Date, but not including post-petition interest, reasonable legal fees, and other charges (these claims have been stipulated to under a Stipulation in the case entitled in re S.A.K.B. Realty Corp, 15-10834 (SCC) as provided at paragraph 3.1 of this Plan

2.2     **Class 2**:     Consists of the Allowed secured claims of the New York City Office of Administration for ECB Liens in the amount of $14,590 reflected as being disputed on the Debtor's Schedule. A claim was filed by such creditor in the amount of $14,632.61.

2.3     **Class 3:**     Consists of the Allowed Secured Claim of Rusi Holding Corp. ("Rusi") secured by a mortgage on the Property less any payments made to Rusi prior to the Confirmation Date. Rusi timely filed proof of claim number 6 in the amount of $578,242.85 representing the amount owed by the Debtor as of the Filing Date, but not including post-petition interest at the judgment rate of 9% per annum up to the value of the security interest held by Rusi, plus reasonable legal fees and other permissible charges, outlays, expenses and the like which are authorized under the loan documents and the judgment, all of which fees and charges shall accrue and be payable up to the value of the collateral held by Rusi, less the adequate protection payments made by the Debtor to Rusi post-petition. The Court has directed that Rusi's Secured Claim be treated as an Allowed Claim.

2.4     **Class 4:**     The allowed claims of unsecured creditors, consisting of the claims of Fox y Garcia.

2.5     **Class 5:**     The equity interest of the Debtor held by Janet Bhoopsingh.

## ARTICLE III

## CLAIMS UNDER THE PLAN

**CLASS 1**

3.1     The Allowed claims of this Class shall be paid in full up to the amount of its Allowed claim from the proceeds of sale of the Property. This creditor has stipulated in a Stipulation filed in this Court, and a case entitled S.A.K.B. Realty Corp. (Case No. 15-10834) (SCC) that the claims of this creditor shall be paid, including "interest accruing at the statutory rate which tax lien claims, plus reasonable attorneys fees" over a period of 8 months after the

Confirmation Date but the Debtor has now agreed to make full payment as a first priority on account of the allowed claims of this Class upon a Closing of the Sale of the Property in accordance with the auction sale. The Debtor shall undertake the sale of such Property at auction on February 9, 2017 (the "Maltz Auction Sale Date"), but the Closing on the sale of the Property to the successful bidder shall not occur until after confirmation. The Debtor is holding a proposed contract with Maltz Auctions, Inc. d/b/a Maltz Auctions ("Maltz"), licensed auctioneers, to sell the Property at one of its auctions. Any Sale will be subject to an Order of this Court approving the sale.

  3.2  The sale of the Property shall take place free and clear of all liens, claims and encumbrances, with all liens, claims and encumbrances to attach to the proceeds of sale to the extent of the validity and in the priority that they appear prior to the sale. The proceeds of the sale shall be paid at the Closing in accordance with this Plan to any holders of Allowed claims secured by valid and perfected liens and including any real estate taxes, water and sewer charges entitled to a first priority (including Class 1 tax lien claims), and other Allowed municipal liens, and other liens or claims as necessary to close title unless the Debtor is exempted from payment, and thereafter any unpaid United States Attorney's Fees, costs and expenses of the estate in connection with such sales, including any closing costs and closing attorney's fees and any unpaid administrative expenses for fees awarded to Court appointed professionals for the Debtor and tax liens. Maltz shall be compensated outside of the Plan as a buyer's premium by the successful bidder and/or the Debtor.

  3.3  Rusi may Credit Bid its Allowed Secured Claim provided that it (i) submits to Debtor's counsel by the Confirmation Date the amount of its claim, and the Allowed Claims of Classes 1 and 2, as of the date of the Sale, (ii) pays, as part of the Credit Bid, the Allowed Class 1 and 2 claims at Closing, and (iii) bids in accordance with the Court-approved Bid Procedures,

including any requirement that Rusi demonstrate that it has the present financial capability to consummate the transaction applicable to bidders in general. In the event that Rusi is determined to be the successful bidder at the auction: (i) Rusi shall be obligated to pay Maltz a buyer's premium equal to 6% of the difference between the amount of Rusi's initial Credit Bid and its successful bid; and (ii) the Debtor shall be obligated to pay Maltz an amount equal to 1% of the amount of Rusi's initial Credit Bid (which entitlement to a 1% commission rate payment cannot be assigned by Rusi) from sources other than the sale proceeds which are being paid under the Plan to Classes 1, 2, 3 and 4 and administrative claims.

       3.4    NYCTL and any other lienor or mortgagee shall deliver any satisfactions, releases of judgment or other documentation necessary or desirable to effect Closing on the sale of the Property in exchange for and upon receipt and clearance of full payment of the Allowed claim. The Debtor may move in the Court herein on expedited five days notice to compel any such lienor to comply with its obligations hereunder.

**CLASS 2**

       3.5    Such Class 2 shall be paid (or a reserve set up for) from the proceeds of the sale after the payments identified as treatment for Class 1 up to the amount of the Allowed claim held by such creditor, in full satisfaction and settlement of such claims, all as set forth in the treatment of Class 1

**CLASS 3**

       3.6    The Allowed secured claim of Rusi shall be paid in full up to the amount of Rusi's Allowed Claim on the Effective Date but only after the payment of the Allowed Claims in Class 1 and 2. These provisions shall not apply in the event that Rusi determines to Credit Bid and Rusi is the Successful Bidder for the Property. This treatment shall be in full satisfaction and settlement of the claims of Class 3.

**CLASS 4**

3.7     The allowed claims of any unsecured creditors shall be paid pro rata from the net proceeds of the sales of the Debtor's properties, net after payments in full to all Allowed Claims in Classes 1, 2 and 3 and all Administrative Claims and other Claims having priority in full satisfaction and settlement of such claims.  The Debtor stipulated with Fox y Garcia, a litigant, to pay such creditor its Allowed Claim from the proceeds of the Sale after payment of Classes 1, 2 and 3 and all administrative expenses and disposition of the State Court deciding this litigant's claims.  The Debtor does not believe it has any such claims.

**CLASS 5**

3.8     The equity interest of the Debtor held by Janet Bhoopsingh shall receive the balance of net proceeds of the sale of the Debtor's properties, net after payments to Classes 1, 2 ,3 and 4 and administrative expenses as set forth above  in full satisfaction and settlement of such equity interest.

**ARTICLE IV**

**ADMINISTRATION EXPENSES AND UNCLASSIFIED CLAIMS**

4.1     Chapter 11 priority creditors holding Allowed Claims, including New York State and the Internal Revenue Service tax and other claims and other amounts entitled to priority of payment, and administration creditors, including the attorneys and any other professionals of the Debtor who have rendered services and who are entitled to compensation under Sections 327 and 503(b) of the Bankruptcy Code, and the fees payable to the Office of the United States Trustee under 28 U.S.C. § 1930, are not classified and shall be paid in full on the Effective Date, from the balance of funds available after payments or reserves of Classes 1, 2 and 3 and shall accrue and continue to be paid up through the conversion to Chapter 7 or closing date of this Chapter 11 Case.  If the Sales Price is insufficient to pay the costs of the professionals to effect a Closing,

there will be a risk that the Debtor will not affect the Closing.  The Auctioneer shall be paid pursuant to the Buyer's premium provisions by the Successful Purchaser at the Auction.  All of the within professional Claims may be paid under a different agreement reached with the Debtor prior to confirmation, on the later of 30 days after confirmation or 30 days after the  Effective Date.

      4.2     All United States Trustee fees and professional fees shall be paid from the Debtor's bankruptcy estate.  The Administrative Expenses may be paid from an escrow fund from the proceeds of the sale of the Property, which the Debtor's insolvency attorneys shall hold in escrow  from the balance of the proceeds of sale after payment of or reserves have been established for Classes 1,  2 and 3.  The  escrow shall be distributed first to pay unpaid United States Trustee fees and thereafter to such professionals on a pari passu basis (subject to appropriate orders authorizing such payments).  Any balance of the escrow remaining after all payments have been made or reserved shall be paid to the Ms. Janet Bhoopsingh holders of the Allowed Class 5 Claim on account of her equity interest.

## ARTICLE V

## MEANS FOR EXECUTION OF PLAN

      5.1     The Auctioneer shall arrange to market the Property and schedule the Sale in its February 9, 2017 Auction.  The Sale shall take place in accordance with the Bid Procedures approved by the Court and the Sale Approval Order.  The Property shall be sold or otherwise conveyed to the Successful Bidder free and clear of all liens, claims and encumbrances to attach to the Sales Proceeds to the extent of the validity and priority prior to the Sale.

      5.2     Distribution of Sales Proceeds shall be made to the holders of claims in Classes 1, 2 and 3 and to the administrative and priority creditors as provided for in this Plan.  Rusi shall arrange for the payment of all sums which are required to be paid in cash by Rusi at the time and

in the manner provided in the Bid Procedures to be paid by all Successful Bidders, as part of its Credit Bid, to the Debtor's counsel for distribution to the creditors under the Plan or shall pay such amounts directly at the Closing.

5.3 Fee Applications, if any, shall be filed on notice to creditors.

# ARTICLE VI

# PROCEDURES FOR RESOLVING DISPUTED CLAIMS

6.1 Time Limit for Objections to Claims. As noted, the Debtor and Class 1, the tax lien creditor, and Class 3 (Rusi) have stipulated to the allowance of the creditor's claims in this case. Objections to Claims shall be filed by the Debtor with the Court and served upon each holder of each of the Claims to which objections are made not later than thirty (30) days subsequent to the Confirmation Date or within such other time period as may be fixed by the Court. Unless otherwise extended by Order of the Court, the Debtor may file an objection to the allowance of any Claim filed resulting from the rejection of an executory contract on the later of thirty (30) days following the Confirmation Date or within thirty (30) days after the filing of such Claim and service of a copy of such Claim upon the Debtor as provided for in the Plan.

6.3 Resolution of Disputed Claims. Unless otherwise ordered by the Court, the Debtor shall litigate to judgment, settle or withdraw objections to Disputed Claims, in its sole discretion, without notice to any party in interest, other than notice of not less than ten (10) days notice, as between the Debtor and the Creditor of the claim who is being objected to.

6.4 Payments and distributions to each holder of a Disputed Claim that ultimately becomes an Allowed Claim shall be made in accordance with the provisions of the Plan with respect to the class of Creditors to which the respective holder of an Allowed Claim belongs. Reserves will be maintained in amounts not less than the filed amount of such claim plus interests, fees and costs provided by statute up until payment and the Bankruptcy Code pending

determination of any disputed claim. Such payments and distributions shall be made as soon as practicable after the date that the Court enters a Final Order allowing such Claim, but not later than fifteen (15) days thereafter. Payments shall be made as and when a Disputed Claim has become, in whole or in part, an Allowed Claim or a Disallowed Claim, pursuant to a Final Order or agreement between the Debtor and such Claimant or as allowed by this Plan, with the Allowed claim to be paid on the later of fifteen (15) days after the Effective Date or after the Closing of the sale of the real property or after a final Order is entered allowing the claim.

## ARTICLE VII

## THE REORGANIZED DEBTOR

7.1 The reorganized Debtor shall continue to operate and conduct its affairs with its present management, officers and directors. However, the Debtor may have no assets at some point and may cease operations.

## ARTICLE VIII

## EXECUTORY CONTRACTS

8.1 The Debtor hereby rejects all contracts as of the Filing Date, except as otherwise provided herein. Persons holding claims as a result of the rejection of an executory contract may file claims with the Bankruptcy Court within thirty (30) days of the Confirmation.

## ARTICLE IX

## TRANSFER TAX AND RECORDING FEES EXEMPTIONS

9.1 All the transactions provided for or contemplated in this Plan, including the sale of properties, the incurring of mortgage debt relating to such sales, the cancellation of debt, and the making or delivery of instrument of transfer, shall be exempt from any taxes, transfer taxes, recording fees, or other charges which may be exempted under Section 1146 of the Bankruptcy Code.

## ARTICLE X

## MODIFICATION OF PLAN

10.1 The Debtor may amend and modify this Plan in any nonmaterial way (or upon consent of the creditor affected), at any time, prior to the Confirmation Order, without approval of the Court; after Confirmation, the Debtor may modify this Plan before a substantial consummation of this Plan, with the approval of this Court and upon any mortgagees' right to respond.

## ARTICLE XI

## PROVISIONS FOR CLASSES OR HOLDERS OF CLAIMS WHICH ARE AFFECTED BY AND DO NOT ACCEPT THE PLAN

11.1 Any class or holders of claims or interests which are affected by and do not vote to accept the Plan in accordance with the provisions of Bankruptcy Code Section 1126 shall be treated in a fair and equitable fashion as provided by Bankruptcy Code Section 1129(b).

## ARTICLE XII

## EVENT OF DEFAULT

12.1 The occurrence of any one of the following shall constitute a default by the Debtor under the Plan with respect.

(a) the Auction is not held on or before February 19, 2017 through some fault of the Debtor,

(b) the Closing does not occur through some fault of the Debtor or the Debtor otherwise refuses to convey Title to the Property to the Successful Bidder within the time periods required under the Bid Procedures approved by the Court,

(c) the Debtor fails to make any distribution or payment due under the Plan unless such default has been waived,

(d) the Debtor seeks relief under any Federal or State insolvency, and

(e) if a receiver, liquidator, custodian or trustee is appointed or substantially all of the Property of the Debtor prior to completion of the payments due.

12.2    Upon the occurrence of an Event of Default, on application to the Court on three (3) days business notice, to the Debtor and to the United States Trustee, the Automatic Stay under Section 362 of the Bankruptcy Code shall be vacated as to the rights of Rusi to the Property, and the Creditors shall otherwise have all rights available to them under state law or the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, or under this Plan.

## ARTICLE XIII

## DISCHARGE AND RELEASE

13.1    Pursuant to Section 1141(d) of the Bankruptcy Code the Confirmation Order shall discharge claims against the Debtor.  Except as expressly provided herein, , the rights afforded in the Plan and the treatment of all Creditors and holders of stock interest provided herein shall be in exchange for and in complete satisfaction, discharge and release of all Claims arising out of the transactions involving this Debtor existing as of the Confirmation Date, of any nature whatsoever, whether  known or unknown, contingent or liquidated, including  any interest accrued or expenses incurred thereon from and after the Debtor's Filing Date, against the Debtor and the Debtor-in-Possession (or any of its properties or interest in properties), (excluding negligence acts of willful misconduct, ultra vires acts, and breach of fiduciary duty).  Upon the Confirmation Date, except as specified in the Plan, and conditioned upon compliance with the Plan, the Confirmation Order and/or Section 1141 of the Bankruptcy Code, all Claims against the Debtor will be satisfied, discharged, and released (except for those obligations identified in the Plan) in full exchange for the consideration provided for hereunder.  All persons and entities

shall be precluded from asserting against the Debtor, its successors, its respective assets or properties any of the above Claims that occurred prior to the Confirmation Date.

13.2 Upon Confirmation, the provisions of the Plan will bind the Debtor, its equity holders and creditors, whether or not they have accepted the Plan. All Liens and Claims are canceled and extinguished unless dealt with differently in the Plan. Satisfaction of the Debtor's pre-Chapter 11 debts and those incurred subsequently to the commencement of this case all are governed by the Plan.

## ARTICLE XIV

## INJUNCTION AND EXONERATION

14.1 Except as otherwise provided in the Plan or Confirmation Order all entities which have held, currently hold or may hold a debt, Claim, other liability of interest against the Debtor pursuant to the provisions of Section 1141(d) of the Bankruptcy Code and this Section, are permanently enjoined from taking any of the following actions on account of such debt, claim, liability, interest or right: (a) commencing or continuing in any manner any action or other proceeding on account of such Claim against property which is to be distributed under this Plan, other than to enforce any right to distribution with respect to such property under the Plan; (b) enforcing, attaching, collecting, or recovering in any manner or judgment, award, decree, order against the Debtor other than as permitted under sub-paragraph (a) above; and (c) creating, perfecting or enforcing any lien or encumbrance against any property to be distributed under this Plan.

## ARTICLE XV

## RETENTION OF JURISDICTION AND DISCHARGE

15.1 Notwithstanding Confirmation, the Bankruptcy Court shall retain jurisdiction for the following purposes:

(a) Determination of the allowability of Claims upon objections filed to such Claims and to any litigation commenced by the Debtor post-confirmation related to the Chapter 11 Case, the Plan or any creditor claims, except that Debtor shall not commence any litigation with respect to any Claims;

(b) Determination of requests for payment of Claims and fees entitled to priority under Section 507;

(c) Resolution of any disputes concerning the interpretation of the Plan;

(d) Implementation of the provisions of the Plan;

(e) Entry of Orders in aid of consummation of the Plan;

(f) Modification of the Plan pursuant to Section 1127 of the Code;

(g) Adjudication of any causes of action including voiding powers actions commenced by the Debtor-in-Possession; and

(h) Entry of a Final Order of Consummation and closing the case.

Dated: New York, New York
January 12, 2017

By: */s/ Janet Bhoopsingh*
President

*/s/ Leo Fox*
Leo Fox (LF-1947)
Attorney for Debtor and
Debtor-in-Possession
630 Third Avenue -18th Floor
New York, New York 10017
(212) 867-9595